United States District Court
Southern District of Texas
**ENTERED**
July 24, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| United States of America | § § § § | |
| | § | Case No. 4:24-cr-00339 |
| v. | § § | |
| Cedrick Eugene Gloud | § § § | |

## ORDER REVOKING BOND

On July 24, 2024, the Court held a hearing to determine whether Defendant Cedrick Eugene Gloud violated conditions of his release and, if so, what the consequences should be. Based on the evidence, and as pronounced on the record, the Court concludes that Defendant's release must be revoked.

Pursuant to 18 U.S.C. § 3148(b), an order of revocation and detention is mandatory if the Court finds (1) either probable cause that the defendant committed a crime while on release, or clear and convincing evidence that the defendant violated some other condition of release; and (2) either the factors from Section 3142(g) indicate that there is no condition or combination of conditions that will reasonably assure that the defendant will not flee or pose a danger, or that the defendant is unlikely to abide by any condition or combination of conditions of release. 18 U.S.C. § 3148(b). In addition, a finding that probable cause exists to conclude that the defendant committed a crime

while on release raises a rebuttable presumption that there is no condition or combination of conditions that will assure that the defendant will not pose a danger if he were to remain on release. *Id.*

Clear and convincing evidence showed that Defendant violated multiple and significant conditions of his release. First, Defendant unlawfully used marijuana and opiates, as evidenced by his urine sample submitted on May 29, 2024. He admitted to using marijuana, and he never substantiated his claim that the opiates were prescribed by a physician. Second, without court permission, Defendant left his court-mandated address on June 7, 2024, where he had been ordered to remain on home detention with a third-party custodian, and unilaterally moved to a different and non-approved address. Third, despite his Probation Officer's directive denying Defendant's request to leave his approved residence for an evening church revival on June 23, 2024, Defendant went there anyway. And later that night, Defendant defied his home-detention restriction by leaving for the entire night, from 12:11 a.m. to 7:30 a.m., without prior permission and any legitimate explanation.

In addition, Defendant failed to appear for the first scheduled hearing on the petition to revoke his pretrial release, which was set for July 18, 2024 at 1:00 p.m. Although Defendant eventually showed up, he did so more than hour late and was promptly arrested. The evidence reflects that Defendant did not even depart his location until almost thirty minutes after the court setting was

to begin. And this was the *second* time that Defendant was egregiously late for a court-appearance, having showed up hours after he was supposed to make an initial appearance on July 2, 2024. Thus, Defendant had prior notice that he needed to arrange transportation to court well in advance of a court setting to ensure that he would timely appear. He did not do so—even to attend a scheduled hearing where his status on bond was at stake.

Moreover, the foregoing findings also demonstrate probable cause to believe that Defendant committed new crimes while on release. The positive drug test, alone, shows that Defendant engaged in criminal activity. This, in turn, creates a presumption that Defendant's continued release would pose a danger to the public—a presumption that Defendant failed to rebut.

But the Court also concludes that the nature and pattern of Defendant's violations negates any likelihood that he would abide by any conditions of release designed to ensure that he poses no danger to the public and would appear in court as required. Defendant has persisted in using illicit drugs despite being provided drug treatment. Defendant willfully disobeyed the U.S. Probation Office's explicit directive to refrain from leaving his specific address. He also stayed out all night, in defiance of the home-detention requirement. Defendant further unilaterally moved to a different address, away from the supervision of his court-approved third-party custodian.

Thus, even if the Court were inclined to excuse Defendant's tardy appearance at the July 18, 2024 hearing, a wealth of evidence shows that he has no regard for the other conditions imposed to ensure that he would pose no danger and would make his court appearances. Defendant was already subject to tight restrictions, including home detention, leaving no further alternatives for the Court to impose. And given his conduct, there is no basis to believe that he would behave any differently if afforded another chance to remain on release under the same conditions that he has violated in serious respects.

Accordingly, it is **ORDERED** that Defendant Cedric Gloud's bond (Dkt. 16, 17) be **REVOKED**, and that he be **DETAINED** in custody pending trial.

Signed on July 24, 2024, at Houston, Texas.

_Yvonne Y. Ho_
Yvonne Y. Ho
United States Magistrate Judge